BARTLETT A. HINSON, WILLIAM FARRIOR AND JOSEPH
HINSON, AS EXECUTORS OF HADLEY HINSON, DE-
CEASED, APPELLANT, VS. WILLIE R. BOOTH, APPEL-
LEE.

HOMESTEAD EXEMPTIONS—PERSONAL PROPERTY EXEMPTION MAY BE
DISPOSED OF BY WILL.

1. The widow and heirs, on the death of the *pater familias,* acquire
their proprietary rights of property *in the things* exempted,
not from the constitutional provisions exempting them from
forced sale for the payment of debts, but entirely from the
statutes regulating dower and the descent of property, unaf-
fected by such constitutional provisions, except that the latter
instrument appends *to the things exempted,* in their transmis-
sion to the widow and heirs, the feature of *immunity from
forced sale for the debts of the ancestor.*

2. There can be no homestead or exemption for one person in an-
other's property.

3. The power of alienation is not derived from the Constitution or
statute relating to alienation of homesteads. It is an incident
of the ownership of the property independent of the home-

334 SUPREME COURT.

Hinson, Farrior and Hinson, Exrs., v. Booth.—Statement of Case.

stead law, and the directions and prohibitions of the Constitution or statutes as to the alienation are mere restrictions upon this antecedent power.

4. The Constitution of Florida does not regulate, abridge, or restrict the antecedent power of alienation of the owner of the *personal* property that it gives him and his widow and heirs the privilege of exempting from forced sale for his debts; neither does it regulate, abridge, or restrict his power to dispose of such *personal* property by will. As to such *personal* property exemption, the head of the family is left by the Constitution with the *unrestricted* right to dispose of it by will, to take effect on his death, or to *alienate* it absolutely during his life.

Appeal from the Circuit Court for Jackson county.

STATEMENT.

On the 30th of December, 1889, Annie E. Booth and her husband, Willie R. Booth, filed their bill in equity in the Circuit Court of Jackson county against Bartlett A. Hinson and William M. Farrior, as executors of Hadley Hinson, deceased, in which it was alleged in substance that Hadley Hinson, a resident and citizen of Jackson county, Florida, died in said county in February, 1889. That prior to his death the said Hadley Hinson, on the 20th of February, 1886, made and executed as and for his last will and testament the following paper:

"STATE OF ALABAMA,
    Geneva County.

Know all men by these presents that I, Hadley Hinson, of the county of Geneva, town of Geneva, and State of Alabama, considering the uncertainty of this life and being of sound mind and memory, do make and declare and publish this my last will and testament:

JANUARY TERM, 1897. 335

Hinson, Farrior and Hinson, Exrs., v. Booth.—Statement of Case.

1st. I desire that all my just debts be paid with as little delay as possible.

2d. I give and bequeath to my beloved wife, Elizabeth A. Hinson, all my household and kitchen furniture of every kind and description and one thousand dollars in gold, to be paid to her by my executors hereinafter named and mentioned.

3d. I give and bequeath to my sons, Bartlett A. Hinson and Joseph Hinson and James B. Hinson, each two hundred dollars; and to my son, Green A. Hinson, three hundred dollars; and to my daughter, Elizabeth Stearns, four hundred dollars; and to my daughter, Etta Hutchinson, wife of Allia A. Hutchinson, eight hundred dollars, solely for the use and benefit of herself and her children, and in no event for the same or any part thereof to be applied to the payment of any debts or contracts of her said husband.

4th. I give and bequeath to my two grandchildren, Allie Hinson and Annie Hinson, heirs of my son, William H. Hinson, one hundred dollars each, to be paid to their mother for their use and benefit by my executors. She, their mother, Annie Farrior, is not to be required to give bond.

5th. I hereby grant the power to my executors to take charge of my real estate, if any, and sell privately or at highest bidder and execute titles to the same and then divide the net proceeds of the same, with the balance of my estate not hereinbefore mentioned or disposed of, equal between all my children. I request that my executors after my decease, I desire that my executors carry out this request with as little expense as possible.

6th. I nominate and appoint my two sons Bartlett A. Hinson and Joseph Hinson and my worthy friend

William Farrior to be the executors of this my last will and testament, and I hereby direct that they shall not be required to give bonds as such executors. In testimony whereof I have to this my last will and testament subscribed my name and affixed my seal this 22d day of February, A. D. 1886.

HADLEY HINSON, Sen. (Seal).

Signed, sealed and delivered and published by the said Hadley Hinson as and for his last will and testament in presence of us, who, at his request, and in his presence, and of each other, subscribed our names as witnesses hereto this 22d day of February, A. D. 1886.

JOHN A. CAMPBELL,<br>W. C. McLAUCHLIN.''

That by said will the defendants and one Joseph Hinson were nominated as the executors thereof. That said will has been duly probated in the office of the County Judge of Jackson county, Florida. That the defendants have qualified as executors but that Joseph Hinson had not qualified as such. That the grandchild Allie Hinson to whom a specific bequest was made in said will was never married but died while yet a minor before the death of said Hadley Hinson. That the said Annie E. Hinson since the death of said Hadley has intermarried with the complainant Willie R. Booth. That Elizabeth A. Hinson the widow of Hadley died on the 16th of June, 1889, after the death of said Hadley. That the legatees named in said will except the said Elizabeth A. Hinson and the said Allie Hinson, who have died as stated, are the only heirs at law of the said Hadley. That Hadley Hinson at his death was possessed of in cash and good and solvent securities of a large sum of money, the exact amount not being known to complainants, but somewhere be-

JANUARY TERM, 1897.        337

Hinson, Farrior and Hinson, Exrs., v. Booth.—Statement of Case.

tween seven and ten thousand dollars or more, and other personal property and some real estate. That immediately after the death of the said Hadley, the defendant Bartlett A. Hinson took possession of all his visible property and is still in possession thereof except the sum of about $600 that they are informed and believe is in the possession of the defendant W. M. Farrior. That Bartlett A. Hinson, as they are informed and believe, has paid all of the specific legacies bequeathed by said will, but that he has a large surplus still on hand or should have the same. That the said Hadley owed no debts of consequence, and the same are or should have been paid long ago, and the said estate should be fully administered and the residue in the hands of the executors should be distributed. That the said Bartlett A. Hinson refuses to state to the complainants or to his co-executor and co-defendant the status of the estate of said Hadley Hinson, and has never filed any appraisement, inventory or account of the same in the office of the County Judge of Jackson county. That the said Bartlett A. Hinson further says, pretends and claims that the complainant Annie E. Booth, under the will of said Hadley, has no further interest as a legatee or as an heir at law in the estate of said Hadley, and that he does not intend to pay her anything further than the specific legacy he has already paid her, and that he will administer and distribute said estate according to his interpretation of said will or testament. That he claims to be justified in this course by the 5th item of said will, and that the said Annie E. Booth being a grand-child does not share in the distribution of the residue of said estate. Said item of the will is sub-

mitted by the bill to the court for construction and for decree for its proper execution. That in said will the said Hadley Hinson made equal provision for all his children and grand-children without preference of one over the other. The difference in the amounts bequeathed to them is to be accounted for by the fact that he had in his lifetime made advances to those to whom the smaller amounts were left, or to the father of complainant and the said Allie Hinson in excess of the advances, if any, to those to whom the larger amounts were bequeathed. That said Hadley was on the very best of terms of love and friendship with the complainant, Annie E. Booth, her mother and brother. That they were minors and orphans, and much more needy objects of his bounty, and that he had no intention to cut them off with a mere pittance. That they believe a proper construction of the said will is that said Hadley used in the said fifth item thereof the word "children" not in a strict sense, but as a *nomen collectivum*, synonymous with offsprings or descendants. That said Hadley at the time of his death, and for some time before, was a resident of Jackson county, Florida, and the head of a family residing in said county and State, and that as such head of a family he was entitled to the benefit of the constitution of the State of Florida exempting $1000 worth of his personal property from forced sale under any process of law, and that said personal property inured to the widow and heirs of said Hadley Hinson, and, having children, could not be disposed of by last will and testament, and is not assets in the hands of said executors, and that said last will as to said exempt personal property is null and void. That said will was not attested and subscribed in the presence of the said

JANUARY TERM, 1897.    339

Hinson, Farrior and Hinson, Exrs., v. Booth.—Statement of Case.

testator by three or more witnesses, as provided by statute, and that, in so far as it attempts to dispose of lands, tenements and hereditaments or any estate therein, the same is utterly void and of no effect. That the said defendant Bartlett A. Hinson, being executor, has never given any bond for the proper administration of said estate. That he is personally and individually wholly and utterly insolvent. That if he proceeds to administer and distribute said estate according to his construction of said will the complainant will be wholly remediless in the premises, and great and irreparable injury will be done to complainants unless such contemplated course of administration is averted by the injunction of the court and said defendant be required to give bond for the proper administration of said estate. The bill prays that said will be construed by the court. That so much and such parts thereof as are invalid or void be so declared by the court, and that a proper construction be given to such parts as are valid and in force, and that proper directions for the execution of the trusts by said will created and for the administration of said estate be given to the defendants as executors. That the defendants as executors be decreed to pay over to complainants at once a one-seventh undivided interest in the exempt personal property of said Hadley. That Bartlett A. Hinson be required to give bond with sureties for the performance of his duties as executor. That the defendants as executors be enjoined from distributing the residue of said estate until the further order of the court after a proper construction is made of said will. That in the event the said Bartlett A. Hinson shall fail or refuse to give such bond for the proper performance of his duties as executor as may

be directed, then that he may be removed and deposed as such executor and that he turn over all the assets in his hands to William M. Farrior his co-executor and co-defendant. That the defendants as executors be decreed to render a full, true and perfect accounting of their administration of the estate, and that upon the coming in of said account that one-seventh of the clear residue be paid to complainants for the distributive share of the said Annie E. Booth in the same. There is also the usual prayer for subpœna and general relief.

An injunction was granted as prayed for in the bill and the defendant Bartlett A. Hinson was ordered to give bond to the complainant Annie E. Booth for a proper accounting · to her for her interest in said estate.

The defendant William M. Farrior answered the bill admitting all the allegations thereof to be true.

Bartlett A. Hinson separately answered the bill admitting its allegations to be true, but denies that the 5th item of Hadley Hinson's will can properly be construed as giving to the grand-children of said Hadley, especially to Annie E. Booth, the complainant, any other or further interest in his estate than the specific legacy therein made to her; and denies that said grand-children were therein placed upon an equal footing with his own children. His answer admits that said will was not attested by three witnesses as required by the law of Florida, to convey real estate, but says that it was executed in the State of Alabama where the said Hadley resided at the time of its execution, and that by the law of Alabama only two witnesses are required to a will to effect the valid conveyance of both real and personal property. That said

will has been duly probated in Geneva county, Alabama, as well as in Jackson county, Florida, as the said Hadley Hinson owned both real and personal property in both States, and one of the executors, Joseph Hinson, who has qualified as executor of said will in the State of Alabama where he resides has not been made a party to the bill, and the defendant, in the answer, pleads in abatement the non-rejoinder of the said Joseph Hinson in this suit. The answer denies that the complainant Annie E. Booth as legatee or heir at law is entitled to anything further out of said estate than the specific legacy left her by the will, that has been fully paid to her. His answer also expresses a desire that the court shall construe the will, and his willingness and readiness to comply with such construction. That there are about 400 acres of land belonging to said estate located in Florida and in Alabama.

Replication was filed to the answer, and a voluminous amount of testimony was taken and reported to the court chiefly aimed at establishing and contradicting the inebriate habits of Bartlett A. Hinson, and to establish the kindly and affectionate relations existing between Hadley Hinson and his complainant grand-child Annie E. Booth and her mother, and to establish and contradict the loss of confidence by Hadley Hinson before his death in both Bartlett A. Hinson and William M. Farrior named as executors in his will.

After all of this evidence was taken but before it was reported to the court, by consent of counsel for all parties, the complainant Willie R. Booth filed his bill of revivor in the nature of a supplemental bill, which, after reciting the proceedings already had in

the cause, alleges: That while the said cause was in the position stated, on the 15th day of September, 1890, his wife, the complainant, Annie E. Booth died intestate. That she left no children, and was not indebted to any person whomsoever at her death, and that he the said Willie R. Booth is her sole heir at law, and entitled as such heir, to the same relief to which she would have been entitled under the original bill. That said cause has become abated by her decease. That since the bringing of the original suit Joseph Hinson has qualified as executor of the will of Hadley Hinson, and should be made a party defendant. It prays for a revival of the suit in the name of and in favor of the said Willie R. Booth, and that Joseph Hinson as executor, be brought in as a party defendant, and that the same relief may be granted as originally prayed for.

This supplemental bill in the nature of a bill of review, was demurred to on various grounds not necessary to be stated. The demurrer was overruled and the two defendants Bartlett A. and Joseph Hinson filed an answer thereto in which they adopt the answer already filed by Bartlett to the original bill, and they deny that the said Annie E. Booth or the said Willie R. Booth as her heir at law, have any interest whatsoever in the estate of Hadley Hinson other than the specific legacy left her in the will which had been fully paid to her in her lifetime.

Replication was filed to this answer and the cause was brought on for final hearing upon the pleadings and proofs taken, and the following final decree was rendered on the 8th day of October, 1891: "This cause coming on for hearing upon the pleadings and proof the argument of the solicitors for the respective

parties being heard, upon consideration thereof it was ordered, adjudged and decreed that the last will and testament of Hadley Hinson, deceased, was inoperative to convey the real estate of said testator situated in the State of Florida, but that said real estate is assets of the estate of the said Hadley Hinson, deceased, and that the defendants as executors do proceed to administer upon the same in accordance with the statutes of the State of Florida regulating the administration, settlement and distribution of estates of deceased persons. That the term *"children"* in the fifth item of the last will and testament of the said Hadley Hinson, deceased, is not to be held and construed to mean or include the said Annie E. Booth, the grand-child of said Hadley Hinson, deceased. It is further ordered, adjudged and decreed that the said Hadley Hinson at the time of his death was the head of a family residing in the county of Jackson, State of Florida, and as such head of a family, was entitled to the benefit of the Constitution and laws of the State of Florida, exempting one thousand dollars worth of personal property from forced sale under process of law; that the last will and testament of said Hadley Hinson, deceased, was inoperative to convey said exempt property; that the same upon the death of said Hadley Hinson, inured to the widow and heirs of said Hadley Hinson, and that Annie E. Booth, being an heir at law both of Hadley Hinson and Elizabeth Hinson, his widow, was entitled to one-seventh of said one thousand dollars exemption; and it is ordered, adjudged and decreed that the defendants as executors or either one of them pay over forthwith to the complainant Willie R. Booth the said share of said Annie E. Booth amounting to one hundred and forty-two and 85-100ths

dollars (142.85) together with interest upon the same from the 30th day of December, A. D. 1889. It is ordered, adjudged and decreed that the defendants be taxed with the costs of these proceedings, except the sum of fifteen dollars for taking depositions herein; that the said sum of fifteen dollars be taxed against complainant Willie R. Booth, and the defendants be authorized to retain and deduct the same from the amount hereinbefore decreed to be paid over to said complainant. That the costs hereinbefore decreed, be taxed by the clerk of this court and that execution in ordinary form do issue therefor. That all moneys for costs or otherwise properly paid out by the defendants under this decree be allowed them in their settlement of their accounts as executors by the county judge of Jackson county, Florida. Done, ordered and decreed at chambers in Marianna, Jackson county, Florida, this the 8th day of October, A. D. 1891.

W. D. BARNES, Judge."

From this decree the defendants have taken their appeal to this court.

The other facts in the case are stated in the opinion of the court.

*D. L. McKinnon*, for Appellants.

*Francis B. Carter*, for Appellee.

TAYLOR, C. J.:

The court below has erred in that feature of its decree that adjudges the will of Hadley Hinson, deceased, to be inoperative to convey or dispose of the $1000 *personal property* exemption to which the testator, as the head of a family residing in Florida, was

JANUARY TERM, 1897. 345

Hinson, Farrior and Hinson, Exrs., v. Booth.—Opinion of Court.

entitled under the Constitution, and that said exemption inured to the heirs at law according to the statutes of descent regardless of the disposition made thereof by the will, and that the complainant, through his deceased wife, Annie E. Booth, a grandchild of the testator, was entitled as one of the heirs at law to a one-seventh part of such constitutional exemption.

Sections 1, 2 and 4 of article 10 of our Constitution, entitled "Homesteads and Exemptions," are as follows: "Section 1. A homestead to the extent of one hundred and sixty acres of land, or the half of one acre within the limits of any incorporated city or town, owned by the head of a family residing in this State, together with one thousand dollars' worth of personal property and the improvements on the real estate, shall be exempt from forced sale under process of any court, and the real estate shall not be alienable without the joint consent of husband and wife, when that relation exists. But no property shall be exempt from sale for taxes or assessments, or for the payment of obligations contracted for the purpose of said property, or for the erection or repair of improvements on the real estate exempted, or for house, field or other labor performed on the same. The exemptions herein provided for in a city or town shall not extend to more improvements or buildings than the residence and business house of the owner; and no judgment or decree or execution shall be a lien upon exempted property except as provided in this article."

"Section 2. The exemptions provided for in section 1 shall inure to the widow and heirs of the party entitled to such exemption, and shall apply to all debts, except as specified in said section."

"Section 4. Nothing in this article shall be con-

strued to prevent the holder of a homestead from alienating his or her homestead so exempted by deed or mortgage duly executed by himself or herself, and by husband and wife, if such relation exists; nor if the holder be without children to prevent him or her from disposing of his or her homestead by will in a manner prescribed by law.''

This court in the case of Godwin vs. King, 31 Fla. 525, 13 South. Rep. 108, in construing the second section of the Constitution quoted above has said: ''The construction put upon the old Constitution was that the exemptions provided for was an exemption from sale for the debts of the homesteader, and that this exemption was all that inured to the heir after the death of the ancestor, by virtue of the Constitution. The provision in this Constitution, that the exemption should accrue to the heir, did not cast upon him an estate in the exempt property, but was a shield for so much of his inheritance against the debts of his ancestor. The homestead article in the Constitution of 1885 is no more a regulation of the descent of property than the former one of 1868. The term inure is employed instead of accrue, but this term is not equivalent to the word descend, or any other word importing the descent of property. The exemption provided for is an exemption from forced sale for the debts of the homesteader who is the head of a family residing in this State, and this exemption is all that inures to the widow and heirs by virtue of the Constitution. Upon no reasonable construction of language can the present Constitution, any more than the former one, be construed as granting a title to, or the casting of a descent, as to the homestead exemption upon either the widow or heir. The homestead exemption inures

to the widow, as widow, and to the heirs as such, and their respective rights in this property must be ascertained from other sources." It was said further in that case that "the exemption provided is an exemption from sale for debts of the owner of the property who is the head of a family residing in this State, and this exemption as homestead is all that inures to the widow and heirs after his death by virtue of the Constitution." It was held in that case also that these provisions of the homestead article of the Constitution did not repeal, abridge or affect in any way the statutes of this State entitling a widow to dower in her deceased husband's estate, but that under such dower statutes she was entitled to dower in all of the exempt property both real and personal, unaffected by these provisions of the Constitution. Purnell vs. Reed, 32 Fla. 329, 13 South. Rep. 874. These cases and others cited therein have settled the doctrine in Florida that the homestead provisions of our Constitution *do not undertake to cast an estate* in the exempted properties upon the widow or heirs or to regulate or establish their rights of property inheritance therein, but that such rights must be ascertained from other sources, *viz:* The statutes regulating dower and the laws of descent, but that all that *inures* to the widow and heirs under the second section quoted from the Constitution is the right to exempt the property from forced sale for the debts of the deceased head of the family. The widow and heirs, on the death of the *pater familias*, acquire their proprietary rights of property *in the things* exempted, not from the constitutional provisions quoted, but entirely from the statutes regulating dower and the descent of property, unaffected by such constitutional provisions, except that

the latter instrument appends *to the things exempted*, in their transmission to the widow and heirs, the feature of *immunity from forced sale for the debts of the ancestor*. All this being settled, it remains to be seen whether the Constitution, by appending to the property exempted this *immunity* in the hands of the widow and heirs from forced sale for the debts of the ancestor, or in any other manner abridges the right of *alienation* of it by the ancestor during his life, or his right to dispose of it by will to take effect at his death: Mr. Freeman, in a note to Poole vs. Gerrard, 65 Am. Dec. 482, correctly and tersely says: "'In the absence of statutes restricting alienation of homesteads, the owner thereof has undoubtedly as full and perfect a right to convey the property as he would have had if it had not been a homestead, the mere exemption of it from forced sale having no tendency to limit the right of voluntary alienation. The power of alienation is not derived from the statute relating to alienation of homesteads. It is an incident of the ownership of the property independent of the homestead law, and the directions and prohibitions of the statute as to the alienation are mere restrictions upon this antecedent power. Without any such restriction the property passes, by a conveyance, as if there were no homestead. No express waiver of the homestead is essential, unless the statute requires it, because the property having passed by the conveyance the homestead necessarily ceases. There can be no homestead for one person in another's property." Has our Constitution in any manner *restricted* this antecedent right of alienation incident to the ownership of property, and if so, how and to what extent? Section 1 of said article 10, quoted above, expressly

## JANUARY TERM, 1897. 349

Hinson, Farrior and Hinson, Exrs., v. Booth.—Opinion of Court.

renders the *real estate* inalienable, except with the joint consent of husband and wife when that relation exists, but the silence of this section as to the alienability of the *personal property* is so pointed as to become an express proclamation of the applicability to it of the maxim, *expressio unius est exclusio alterius.* Section 4, quoted above from the same article, from its language, was seemingly intended to make clear and unmistakable the extent to which the *restrictions* should be carried that were, by the entire article, designed to be thrown around the antecedent *power of alienation,* and this section, too, with equal exclusiveness of expression, confines itself to the "*homestead*" or *real estate;* and, in laying a further restriction upon the disposition of it *by will,* when there are children, as pointedly confines such restriction to the "*homestead*" or real estate. We think it is clear, therefore, that the Constitution has not undertaken to restrict, regulate or abridge the antecedent power of alienation of the owner of the *personal* property that it gives him and his widow and heirs the *privilege of exempting from forced sale* for his debts; neither do we think that his power to dispose of such *personal* property by will has been thereby regulated, abridged or restricted; but that, as to such *personal* property, he is left by the Constitution with the same *unrestricted* right to dispose of it by will, to take effect on his death, as he is left free by the Constitution and laws to *alienate* it absolutely during his life. The immunity from debts that inures to the heirs is appended only to such property as the heirs acquire a right of ownership in at the death of the ancestor. There can never be in one the right to an exemption of property that belongs to another. The right of the heir to the

property of the ancestor does not accrue until the death of such ancestor. When the ancestor while in life disposes of his effects by will, to take effect on his death, the instant of his death brings to the dispositions of property therein made a consummated effectiveness, as though he had made the same dispositions thereof absolutely during his life by deed. When the ancestor, then, disposes of such property by will, if it is therein given to others than his heirs at law, such heirs at his death find themselves in the presence of such a will, with no right of onwership to any property to which the constitutional immunity from debt could attach.

The decree of the court below is reversed in the feature thereof herein adjudged to be erroneous, but in all other respects it is affirmed. The costs of the appeal to be taxed against the appellee.

(Mr. Justice CARTER, being disqualified in this case, took no part in the consideration thereof).